# In the United States Court of Federal Claims

| | |
|---|---|
| **STILLWATER MILLING COMPANY, INC.** ***et al.*****,**<br><br>***Plaintiffs,***<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>***Defendant.*** | No. 24-1243<br>(Filed: August 31, 2026) |

*Thomas S. Stewart*, *Reed W. Ripley*, Stewart, Wald & Smith LLC, Prairie Village, Kansas, *Steven M. Wald*, *Michael Smith*, Stewart, Wald & Smith LLC, St. Louis, Missouri, for Plaintiffs.

*Alexis E. Smith*, Trial Attorney, *Devon Lehman McCune*, *Adam R.F. Gustafson*, Deputy Principal Assistant Attorney General, Environment & Natural Resources Division, Washington, DC, United States Department of Justice, for Defendant.[1]

## OPINION AND ORDER

**HADJI,** ***Judge.***

Plaintiffs filed this action seeking just compensation under the Fifth Amendment for the Government's alleged appropriation of their land for recreational trail use under the National Trails Systems Act, 16 U.S.C. §§ 1241-51 (Trails Act). *See* ECF 1. The core dispute is whether Plaintiffs have a property interest in the land within the rail corridor. Before the Court are Plaintiffs' Motion for Partial Summary Judgment (ECF 18) and the Government's Cross-Motion for Summary Judgment (ECF 25). For the following reasons, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and the Government's Cross-Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiffs collectively have real property interests in 43 parcels of land along a 3.2-mile strip of a rail corridor in Stillwater, Oklahoma. ECF 16 at 1; ECF 18 at 8; ECF 18-1

[1] Alexis E. Smith was counsel of record at the time of briefing. On August 13, 2026, Ms. Smith filed a Notice of Withdrawal, terminating her involvement with the case. ECF 27. Because Ms. Smith was counsel of record during briefing, her name appears in the introduction.

at 1. Beginning in 1899, the Eastern Oklahoma Railway Company (the Original Railroad) acquired property interests in the corridor, as described below. *See* ECF 16 at 2-8; ECF 18-39 through ECF 18-60.

In June 2024, the Surface Transportation Board (STB) provided notice that the State of Oklahoma, through the Oklahoma Department of Transportation (ODOT), and Stillwater Central Railroad, LLC, filed a Joint Notice of Exemption. ECF 18-1. Following the STB notice, the City of Stillwater filed a Petition for Issuance of a Notice of Interim Trail Use (NITU) seeking a right-of-way for interim trail use. ECF 18-2 at 3-4. The STB then issued the NITU in August 2024. ECF 18-3. The NITU granted the City and ODOT a period of one year to negotiate transfer of the line to the City for interim trail use. ECF 18-3 at 3-4. The ODOT and the City entered into a trail use agreement and notified the STB on July 29, 2025. ECF 18-4.

On August 14, 2024, Plaintiffs filed this action, alleging that the issuance of the NITU resulted in a taking of their property. ECF 1. In support of their claims, Plaintiffs submit their ownership deeds for their adjacent properties, Payne County tax assessor parcel reports, demonstrative parcel maps, copies of the applicable original railroad source conveyances, and valuation maps prepared for the Interstate Commerce Commission (ICC).[2] *See* ECF 18 at 13. For purposes of summary judgment only, the parties agree that: (1) Plaintiffs acquired an interest in the property identified in the table below at or before the time of the NITU; and (2) the conveyances listed below identify the source conveyances by which the Original Railroad acquired its interests in the segment of the railroad corridor closest to the real property associated with each respective Plaintiff.[3]

| Plaintiff(s) | Claim Number | Payne County Account Number | Original Conveyance(s) |
|---|---|---|---|
| Billie B. and Movis J. Sorrell-Butler, Trustee of The MJS | 1 | 600013545 | Morris Warranty Deed (17/388)<br>Morris Condemnation (5/616)<br>Map V3-9; Parcel 3 |
| JoJo Lim and Chia Lin Chou | 2 | 600013541 | |
| James C. Thompson and Donna P. Thompson, Co-Trustees of the James C. | 3 | 600013467 | |

[2] Plaintiffs explain that "[i]n the early 20th century, railroads under the jurisdiction of the [ICC] (the STB's predecessor entity) were required to file Valuation Maps and Schedules with the ICC to identify their railroad corridors and [the] instruments through which the railroads acquired their rights to operate the same." ECF 18 at 13 n.4.

[3] The information in this table is drawn from the parties' joint stipulations for purposes of summary judgment, ECF 16. The claims in this table were numbered by the parties. The listed parcel numbers are derived from the ICC Valuation maps. ECF 18 at 13.

| | | | |
|---|---|---|---|
| and Donna P. Thompson Trust under Revocable Trust Agreement | | | |
| Charles C. Hendrix and Michelle E. Hendrix, Co-Trustees of the Charles C. and Michelle E. Hendrix Trust under Revocable Trust Agreement | 4 | 600013449 | |
| Matthew L. Mueggenborg and Bridget Mueggenborg | 5 | 600013440 | |
| Jasper T. Parker | 6 | 600013501 | |
| Greg F. Hilovsky and Sara A. Skiba | 7 | 600017017 | Jones Warranty Deed (18/561) Map V3-9; Parcel 4 |
| G.J. Mains, as Sole Trustee of the G.J. and Jacqueline T. Mains Family Trust | 8 | 600017004 | |
| Richard W. Tenbrink and Julia E. Tenbrink, Co-Trustees of the Julia E. Tenbrink Trust under Revocable Trust Agreement | 9 | 600017308 | |
| Fred R. Van and Josephine V. Van, Co-Trustees of the Fred R. and Josephine V. Van Revocable Trust | 10 | 600017306 | |
| Lance Leon Munson | 11 | 600017305 | |
| Clark Realty Corp. | 12 | 600044099 | Act of Congress March 2, 1899 Beavers Condemnation (5/622) Map V3-9; Parcel 7 |
| Legacy Park Apartments, Limited Partnership | 13 | 600000452 | |
| Robert W. Barnes | 14 | 600017644 | George Warranty Deed (18/64) Map V3-9; Parcel 8 |
| Shane Hoffman | 15 | 600017643 | |
| Kenneth Paul Duke III | 16 | 600017641 | |
| Teresa R. Goodner | 17 | 600017638 | |
| Mary Esther Bradley, Trustee of the Mary Esther Bradley Revocable Trust | 18 | 600017713 | Act of Congress March 2, 1899 Wittum Condemnation (5/618) Map V3-9; Parcel 9 |
| Justin and Susan Wichert, and Jerry and Lise Wichert | 19 | 600013121 | |
| James Scott Smith | 20 | 600017719 | George Warranty Deed (18/64) Map V3-9; Parcel 8 |
| Dublin Rentals, LLC | 21 | 600013119 600013111 | Act of Congress March 2, 1899 Wittum Condemnation (5/618) |

| | | | |
|---|---|---|---|
| Celestine E. Johnson, Trustee of the C.E. Johnson Family Trust and Malinda Lea Duncan | 22 | 600013209<br>600013191 | Map V3-9; Parcel 9 |
| Frits Properties, LLC | 23 | 600017687<br>600017685 | |
| JAF Holdings, LLC | 24 | 600013142 | |
| Stillwater Milling Co. | 25A | 600052429 | Act of Congress March 2, 1899<br>Wittum Condemnation (5/618)<br>Map V3-9; Parcel 9<br><br>Husband Condemnation (5/602)<br>Map V3-S9; Parcels 1, 2 |
| | 25B | 600008886 | Act of Congress March 2, 1899<br>Palmour Condemnation (5/610)<br>Canfield Condemnation (5/607)<br>Abercrombie RofW 6/181)<br>Palmour RofW (6/183)<br>Thomas RofW (6/185)<br>Map V3-S9; Parcels 3, 7, 18-21 |
| | 25C | 600008852 | Act of Congress March 2, 1899<br>Canfield Condemnation (5/607)<br>Abercrombie RofW (6/181)<br>Palmour RofW (6/183)<br>Thomas RofW (6/185)<br>Map V3-S9; Parcels 7, 18-21 |
| | 25D | 600019794 | Hutto Warranty Deed (17/340)<br>Standley Warranty Deed (17/344)<br>Lewis Warranty Deed (17/345)<br>Farrar Warranty Deed (17/339)<br>Farrar Condemnation (5/597)<br>Act of Congress March 2, 1899<br>Canfield Condemnation (Misc./600)<br>Map V3-S9; Parcels 4-6, 8, 9, 23[4] |
| ABI 401 Holdings, LLC | 26 | 600000640 | Miller Warranty Deed (17/346)<br>Lowery Warranty Deed (16/474)<br>Map V3-S9; Parcels 14, 15/16 |
| Thomas D. Berry Revocable Trust | 27A | 600019736 | Lowery Warranty Deed (16/474)<br>Map V3-S9; Parcel 16 |
| Thomas D. Berry Revocable Trust | 27B | 600019739 | |

[4] The parties note that they disagree as to the source conveyance associated with Parcel 23. ECF 16 at 7 n.1. The parties only stipulate that Parcel 23 applies to Claim 25D but do not stipulate the applicable source conveyance. ECF 16 at 7 n.1. The parties further disagree as to whether Parcel 22 applies to Claim 25D. ECF 16 at 7 n. 1.

| | | | |
|---|---|---|---|
| Guy M. Cooper | 28A | 600019732 | |
| Guy M. Cooper | 28B | 600019735 | |
| M Properties LLC | 29A | 600019523 | |
| M Properties LLC | 29B | 600019687 | |
| M Properties LLC | 29C | 600010725 | Harmon Warranty Deed (18/63) Map V3-9; Parcel 6 |
| Southside Baptist Church | 30 | 600008457 | Act of Congress March 2, 1899 Donart Condemnation (7/200) Map V3-9; Parcel 10 |
| Allie Williams | 31 | 600008476 | |
| Tracy Corbett | 32 | 600008469 | |
| Barry L. and Terry L. Adams | 33 | 600016701 | |

ECF 16 at 2-8; ECF 18 at 8; ECF 25 at 10-11.

## LEGAL STANDARD

Rule 56(a) of the United States Court of Federal Claims permits summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

The Supreme Court has instructed that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis omitted). A fact is material if it "might affect the outcome of the suit," and a dispute as to a material fact is genuine if "the evidence is such that a reasonable [trier of fact] could [rule in favor of] the nonmoving party." *Id.* at 248. Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Id.* Though the moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), once this burden is met, the onus shifts to the non-movant to point to an evidentiary conflict on the record; mere denials or conclusory statements are insufficient to defeat summary judgment. *See Anderson*, 477 U.S. at 256.

A summary judgment motion is properly granted "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S at 322. A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for [the trier of fact] to [rule in favor of] that party." *Anderson*, 477 U.S. at 249. "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of

[5] Court of Federal Claims Rule 56(a) is the same as Federal Rule of Civil Procedure 56(a). *Compare* RCFC 56(a) *with* Fed. R. Civ. P. 56(a).

proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland Power*, 16 F.3d at 1202.

"With respect to cross-motions for summary judgment, each motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered." *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968-69 (Fed. Cir. 2009) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). "The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other." *Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed. Cir. 1998). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus*, 812 F.2d at 1391.

## DISCUSSION

To establish a Fifth Amendment taking, a plaintiff must possess a protectable property interest in the subject of the taking. *Palmyra Pac. Seafoods, L.L.C. v. United States*, 561 F.3d 1361, 1364 (Fed. Cir. 2009). In Trails Act cases, the determinative issues for takings liability are:

> (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate;
> (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and
> (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).

*Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996)).

Only the first factor is currently before the Court.[6] *See* ECF 18 at 9; ECF 25 at 38-39. To make this determination, the Court looks to state law. *Castillo v. United States*, 952

[6] In their brief, Plaintiffs raise the second factor (scope of the easement) as well. ECF 18 at 32-33. Per the parties' request (ECF 14), the Court limited summary judgment briefing to "title issues" only. ECF 15. "Title issues" are often understood to exclude the scope of the easement. For example, in *Club Car Wash*, the Court limited briefing to "title issues alone" and clarified that "title issues" meant "any issue related to the title documents only." Order, *Club Car Wash Stillwater 6th, LLC v. United States*, No. 24-1240 (Fed.

F.3d 1311, 1319 (Fed. Cir. 2020). "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1359 (Fed. Cir. 2005) (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002)).

## I. Oklahoma Supreme Court's Presumption of Easement

The Court turns first to the properties involving source conveyances arising from condemnation proceedings. The parties disagree about whether the condemnation proceedings conveyed fee simple estates or easements to the Original Railroad. ECF 18 at 14-21; ECF 25 at 15-25. In *Club Car Wash*, a case concerning the same rail corridor, this Court recently reviewed the interpretive rules that the Oklahoma Supreme Court applies to condemnation proceedings involving railroads. *See Club Car Wash Stillwater 6th, LLC v. United States*, 181 Fed. Cl. 331 (2026). That case also involved interpretation of the Husband, Wittum, Donart, and Morris Condemnations. *Id.* at 338-43.

The parties here advance similar arguments to those presented in *Club Car Wash* regarding the effect of condemnation proceedings under Oklahoma state law, and the Court will apply the same legal principles as it did in that case. *See id.* at 336-43. The Government argues that a condemnation conveys a fee simple interest, unless the condemnation reflects an intent to take a lesser estate. ECF 25 at 16 (citing *Elliott v. City of Guthrie*, 725 P.2d 861, 864 n.19 (Okla. 1986)). In contrast, Plaintiffs argue that a condemnation conveys only an easement, unless the proceedings show an intent to convey fee simple. ECF 18 at 14 (citing *Martin v. City of Bethany*, 182 P.2d 517, 518 (Okla. 1947)).

In *Club Car Wash*, the Court recognized that the Oklahoma Supreme Court has equivocated over which rule to apply. 181 Fed. Cl. 336-38.. The Government's preferred rule, set forth in *Jones v. Oklahoma City*, 137 P.2d 233, 238 (Okla. 1941), stands in sharp tension with Plaintiffs' favored rule, promulgated in *Missouri, K. & T.R. Co. v. Miley*, 263 P.2d 415, 417 (Okla. 1953). Accordingly, the Court deemed it necessary to examine a series of cases in which the Oklahoma Supreme Court confronted pre-statehood condemnations. *See Club Car Wash*, 181 Fed. Cl. 336-38. After careful review, the Court determined that the Oklahoma Supreme Court has progressively moved toward Plaintiffs' preferred approach, consistently declining to apply the *Jones* rule and endeavoring to cabin *Jones* to its facts. *See id.* at 338 (summarizing this trend).

---

Cl. June 10, 2025), ECF 28. The parties did not brief the scope of the easements. *See* Motion for Partial Summary Judgment, *Club Car Wash Stillwater 6th, LLC v. United States*, No. 24-1240 (Fed. Cl. July 3, 2025), ECF 29 at 15 n.3 ("As directed by the Court, Plaintiffs will not address the scope of the railroad's easement …."); *see also Arnold v. United States*, 137 Fed. Cl. 524, 545 n.25 (2018) (declining to address scope arguments for similar reasons and distinguishing between scope of easement issues and "issues of title and adjacency"). The Court considers title issues to include only the threshold issue of whether plaintiffs have a property interest subject to a taking. Therefore, the Court will not evaluate Plaintiffs' argument about the scope of easement at this stage. *See* ECF 18 at 32-33.

Consistent with the Court's review of the relevant caselaw in *Club Car Wash*, the Oklahoma Supreme Court's legal analysis in *Miley* controls. *Id.* at 336-39. In *Miley*, the Oklahoma Supreme Court recognized a presumption that railroad condemnation proceedings convey an easement, unless the proceedings "clearly show an intention to acquire [fee simple] title and that such a title was in fact acquired under the condemnation decree." *Chi., Rock Island, & Pac. R.R. v. Morgan*, 421 P.2d 268, 272 (Okla. 1966) (quoting *Miley*, 263 P.2d at 417). The Court will apply this rule from the *Miley* Court to analyze the condemnations in the present case. *See Club Car Wash*, 181 Fed. Cl. at 338.

## II. Beavers, Wittum, Husband, Canfield, Palmour, and Donart Condemnations

The parties disagree as to whether the condemnation proceedings involving the Beavers, Wittum, Husband, both Canfield,[7] Palmour, and Donart Condemnations conveyed an easement or a fee simple interest to the Original Railroad.[8] Central to their disagreement, the parties dispute the legal effect of the phrase "right of way" as written in the condemnation reports. ECF 18 at 15; ECF 25 at 19. The parties do not dispute any facts related to the condemnation proceedings. Under Oklahoma law, contract interpretation is a question of law. *K & K Food Servs., Inc. v. S & H, Inc.*, 3 P.3d 705, 708 (Okla. 2000). Therefore, the Court finds that summary judgment is appropriate. The Court will review the relevant language within the condemnations to determine whether they show a clear intent to convey fee simple. *See Club Car Wash*, 181 Fed. Cl. at 338-40; *Miley*, 263 P.2d at 417.

Plaintiffs argue that the condemnations convey easements because the condemnations "expressly state that the property is appropriated *as* a right of way, not merely *for* a right of way." ECF 18 at 16 (emphasis added). As support for this proposition, Plaintiffs point to two phrases in the Beavers Condemnation as exemplar language: "J.M. Beavers … may sustain [injury] by reason of such railroad and … damages which [he] will sustain by the appropriation of a part of his said land **as [and] for a right of way** for the Eastern Oklahoma Railway Company," and "[t]he Eastern Oklahoma Railway Company has located its said line of Railway over and across the same, and that it is necessary for the said Eastern Oklahoma Railway Company **to appropriate as and for its right of way over and across the same**, a part of said real estate …." ECF 18 at 16. Beyond correctly noting that the term "right of way" has two meanings in Oklahoma railroad parlance, s*ee Aubert v. St. Louis-San Francisco Ry. Co.*, 251 P.2d 190, 193 (Okla. 1952), the Government contends that other language in the condemnation reports indicates a fee

---

[7] Two separate Canfield Condemnations are at issue, Canfield 600 and Canfield 607. ECF 18-40; ECF 18-41. When referring to them individually, the Court distinguishes them by their record book numbers. *See* ECF 16 at 6.

[8] Plaintiffs allege that, as to these seven condemnations, ICC Valuation Maps and Schedules additionally identify federal land grants as having conveyed the corridor interest. ECF 18 at 17. However, the parties agree that the condemnation reports are conclusive in determining what interest the Original Railroad obtained. ECF 18 at 17; ECF 25 at 23.

simple interest, such as "appropriation of a part of his said land," "a part of said real estate," and "the value of the land taken." ECF 25 at 19 (citing ECF 18-39 through 18-47).

In *Club Car Wash*, the Court followed the Oklahoma Supreme Court's reasoning in *Morgan* that various phrases, such as "will be taken and appropriated" and "real estate so taken" did not establish a clear intent to convey fee simple. *See* 181 Fed. Cl. at 339; *Morgan*, 421 P.2d at 272. The phrases cited by the Government here are strikingly similar to the phrases that the *Morgan* Court found did not overcome the presumption of easement. *See Morgan*, 421 P.2d at 272. Because the Husband, Wittum, and Donart Condemnations are the same condemnations that were at issue in *Club Car Wash*, and the Court's reasoning remains unchanged, the Court concludes that those condemnations do not establish an intent to convey fee simple. *Club Car Wash*, 181 Fed. Cl. at 338-40. Applying *Morgan* to the Beavers, Canfield, and Palmour Condemnations, the language in the condemnation reports, such as "as and or for a right of way" and "to appropriate," does not express a clear intent to convey fee simple to the Original Railroad. This language is dissimilar to the unambiguous fee simple language present in cases in which the Oklahoma Supreme Court has held that railroad condemnation proceedings conveyed fee simple interests. For example, in *Jones*, the condemnation at issue transferred "*all* the right, title and interest," to the railroad. 137 P.2d at 237 (emphasis added). Therefore, the language here does not overcome the presumption of easement. *See Morgan*, 421 P.2d at 272.

Resisting this reasoning, the Government attempts to distinguish *Morgan*. *See* ECF 25 at 20 n.3. Specifically, the Government maintains that *Morgan* concerned a "defective condemnation proceeding" and failed to include actual language from the condemnation report. *Id.* But under *Morgan*, the fact that a condemnation proceeding is defective is of little consequence when an entity with the power of eminent domain enters into actual possession of the land, provided certain conditions are met. *See Morgan*, 421 P.2d at 271. There, the Oklahoma Supreme Court held that, despite defects in the condemnation proceeding, the title held by the railroad company was "the equivalent of a 'title by condemnation regularly acquired,'" and proceeded to "look to the condemnation proceedings" to determine whether the railroad took a fee simple title or only an easement. *Id.* at 271-72. The Government's attempt to distinguish the instant case based on the defective condemnation proceeding in *Morgan* is thus misguided.

Nor does the Court agree with the Government's claim that *Morgan* is distinguishable because it "does not contain the actual language from the condemnation report." ECF 25 at 20 n.3. The Government's Reply appears to back away from this argument by engaging with direct quotes from "[t]he condemnation report in *Morgan*." *See* ECF 27 at 10. But to be clear, the *Morgan* majority quotes several phrases from "the 1901 condemnation proceedings," and it is not at all apparent that this is a reference to something other than the condemnation report. *See Morgan*, 421 P.2d at 272. And in any case, the partial dissent explicitly attributes some of these same phrases to "the Report of Commissioners." *Id.* at 274-75 (Davison, J., dissenting in part). Accordingly, *Morgan* is

not distinguishable on the basis that it lacked analysis of the "actual language" from the condemnation report.

The Government's reliance on the grammar-based "direct object test" likewise fails, because it is inapplicable to involuntary conveyances. *See* ECF 27 at 9. Under this test, Oklahoma courts construe the language of a deed and ask, "What is the direct object of the verb or verbs of conveyance?" to determine the nature of the conveyed interest. *St. Louis-S.F. Ry. Co. v. Humphrey*, 446 P.2d 271, 276 (Okla. 1968). For example, in *Humphrey*, the Oklahoma Supreme Court found that a deed conveyed fee simple when the direct object of its verbs of conveyance ("bargain, sell and convey") was "[a] strip of land," notwithstanding a separate reference to a right of way. 446 P.2d. at 276-77. However, *Humphrey* is not applicable here because *Humphrey* involved a voluntary conveyance. *Id.* at 276. The Court in *Morgan* explained that voluntary conveyance cases are inapposite because different presumptions apply. *See Morgan*, 421 P.2d at 272-73 (distinguishing the case from *Aubert*, 251 P.2d 190, and *Midland Valley R.R. Co. v. Arrow Indus. Mfg. Co.*, 297 P.2d 410 (Okla. 1956)). Not only did the *Morgan* Court decline to apply the direct object test, but it even reached the opposite result to the direct object test. In that case, the direct object of the verbs of conveyance, "taken and appropriated," was "land." *Morgan*, 421 P.2d at 274-75 (Davison, J., dissenting in part) (reciting language from the condemnation proceedings). If this language were present in a deed, *Humphrey* would suggest that fee simple was conveyed, yet the *Morgan* Court concluded that condemnation conveyed an easement. Therefore, the Court will not apply the direct object test to the condemnations in the present case.

Because nothing in these conveyances overcomes Oklahoma's presumption of easement in condemnation proceedings involving railroads, the Court finds as a matter of law that the Beavers, Wittum, Husband, Canfield, Palmour, and Donart Condemnations all conveyed easements to the Original Railroad. Whether Plaintiffs have established a property interest in the rail corridor based on the centerline presumption is discussed *infra* Section IX.

## III. Morris and Farrar Warranty Deeds and Condemnations

The Court turns next to the Morris and Farrar source conveyances, which involve both condemnation reports and corresponding deeds that were executed close in time. The parties do not dispute the facts surrounding the condemnations and warranty deeds. Rather, they dispute the legal effect of these conveyances, making summary judgment appropriate for resolving these disputed questions.

The parties disagree regarding which conveyance controls in both circumstances. Plaintiffs "concede that both the Farrar Deed … and the Morris Deed … include language otherwise apt to convey a fee interest," ECF 18 at 20, but argue that "the Farrar and Morris Condemnations and Deeds are interrelated instruments that are part of a single transaction" that "must be interpreted together" and construed as easements. ECF 26 at 20. The Government contends that both voluntary deeds control under the Oklahoma Supreme

Court's holdings in *Oklahoma City v. Dobbins* (*Dobbins I*), 44 P.2d 148, 151 (Okla. 1935), and the merger doctrine. ECF 25 at 21. Plaintiffs do not address *Dobbins I*'s relevance to the Farrar and Morris conveyances. The Court's *Club Car Wash* opinion considered the Morris conveyances and concluded that the Morris Warranty Deed controlled and conveyed fee simple. 181 Fed. Cl. at 340-43.

The Court will again adhere to its reasoning set out in *Club Car Wash*, to find that *Dobbins I* controls the outcome here. *Id.* at 341-42. *Dobbins I* and a later iteration of the case, *Oklahoma City v. Dobbins* (*Dobbins II*), 117 P.2d 132 (Okla. 1941), dealt with voluntary conveyances made during ongoing condemnation proceedings. In *Dobbins I*, the Oklahoma Supreme Court held that condemnation proceedings cannot "be used, within themselves, to limit the title conveyed by the execution of [a] deed." 44 P.2d at 151. *Dobbins II* clarified that the court had reached this holding when confronted with a landowner that had executed a deed conveying her land to a railroad company after condemnation proceedings involving the land had begun. 117 P.2d at 134. The Morris and Farrar conveyances occurred under similar circumstances.

Turning first to the Morris conveyances, prior to the issuance of the Morris condemnation report, the landowner executed a fee simple deed for the land on November 22, 1899. *See* ECF 18-49. The condemnation report was then issued on November 25, 1899, however, by statute condemnation proceedings were required to be initiated at least ten days before the condemnation report. ECF 18-47; *see* Stat. of Okla. Terr. c. 17, art. 9, § 28, p. 256 (1893). As in *Dobbins I*, the fee simple deed was executed after condemnation proceedings had started, and therefore, the condemnation could not "limit the [fee simple] title conveyed by execution of the deed." *See Dobbins I*, 44 P.2d at 151. As in *Club Car Wash*, the Court concludes that the Morris Warranty Deed conveyed a fee simple estate to the Original Railroad. *See* 181 Fed. Cl. at 340-43.

With respect to the Farrar conveyances, there is no meaningful difference. The condemnation report was issued November 25, 1899. ECF 18-46. Then the warranty deed was executed on November 29, 1899. ECF 18-48. As Plaintiffs acknowledge, the deed contains fee simple language. *See* ECF 18 at 20. As in *Dobbins I* and with the Morris conveyances, the fee simple deed was executed after condemnation proceedings had started, and thus the condemnation proceedings cannot limit the fee simple estate conveyed by the warranty deed. *See Dobbins I*, 44 P.2d at 151. The Court therefore concludes that the Farrar Warranty Deed conveyed a fee simple estate to the Original Railroad.[9]

The merger doctrine further supports these conclusions. "[W]hen a greater and a lesser estate coincide and meet in the same person, the lesser estate is absorbed or merged into the greater estate …." *Bank of Wichitas v. Ledford*, 151 P.3d 103, 114 (Okla. 2006). Here, in two separate circumstances, landowners conveyed both a lesser interest and a

[9] This outcome comports with common sense. It is plausible that a property owner may convey a lesser interest, such as an easement, and then choose to convey the remainder of their interest. Holding that a condemnation report necessarily controls over a later executed warranty deed ignores this possibility.

greater interest to the Original Railroad within a matter of days. Under *Ledford*, the lesser interests merge into the fee simple interests. *See id.* Plaintiffs argue that the conveyances must be "taken and construed together." *See* ECF 18 at 19-21 (citing Okla. Stat. § 158 (1910); *Pauly v. Pauly*, 176 P.2d 491, 495 (Okla. 1946); ECF 26 at 19-21 (same)). Yet, Plaintiffs do not offer authority explaining why the condemnations should control over the fee simple deeds. *See* ECF 18 at 19-21; ECF 26 at 19-21. Indeed, the merger doctrine requires the opposite. *See Ledford*, 151 P.3d at 114. Accordingly, the Morris and Farrar Warranty Deeds control, and the Court finds that the Original Railroad obtained a fee simple interest in the land. Therefore, the Government is entitled to summary judgment with respect to these conveyances.

## IV. Parcel Allegedly Conveyed via Federal Land Grant

Next, the parties dispute title to Parcel 22. Further, the Government disputes whether Parcel 22 is even "applicable." *See* ECF 16 at 7 n.1; ECF 18 at 21 n.14; ECF 25 at 13, 26. Plaintiffs argue that the Original Railroad acquired an easement through a federal land grant because all post-1875 federal land grants are easements. ECF 18 at 21. Plaintiffs believe Parcel 22 was conveyed via a federal land grant based on the ICC maps' indication that the Original Railroad acquired its interest in Parcel 22 via an Act of Congress dated March 2, 1899. *See id.*; ECF 26 at 22. The Government, in turn, disputes that the cited Act applies to Parcel 22. *See* ECF 25 at 13, 26. Under the Court's review of a summary judgment motion, the Court's inquiry ends where there is a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Here, there is a dispute as to whether Parcel 22 is "applicable." In their joint stipulations, the parties represented as follows: "[T]he parties note their disagreement as to whether Valuation Parcel 22 applies and reserve that issue for further proceedings." ECF 16 at 7 n.1.

This reservation notwithstanding, Plaintiffs argue that the Government "admitted in its Cross-Motion that the Federal Land Grant is applicable," thus "clear[ing] up the last 'disputed' fact issue regarding applicable source conveyances." ECF 26 at 22 n.24 (citing ECF 25 at 26). Specifically, Plaintiffs reference the following language in the Government's brief: "Plaintiffs have also not demonstrated that the parcels listed on the ICC valuation maps as being acquired through federal land grant (Parcel 22) or adverse possession (Parcel 23) (both applicable to Stillwater Milling Company, Claim 25.D) are easements." ECF 25 at 26. The Court disagrees with Plaintiffs' characterization of this language as a concession on applicability. That is because the Government's point regarding applicability can reasonably be understood in two different ways: (1) as an admission that Parcel 22 is an applicable valuation parcel, reversing the Government's previous position; or (2) simply as an acknowledgment that Parcel 22 has been raised in relation to Claim 25D. The fact that the Government maintains that Plaintiffs have not provided evidence that the relevant statute applies or that a land grant was issued suggests the latter interpretation is correct, as those arguments cannot be reconciled with an admission that "the Federal Land Grant is applicable." *See* ECF 25 at 26; *see also* ECF 27 at 14 (describing the parcels as "*parcels that Plaintiffs assert* the [R]ailroad acquired only

through federal land grant or adverse possession") (emphasis added). Accordingly, the Court finds that the parties continue to disagree as to whether Valuation Parcel 22 applies. *See* ECF 16 at 7 n.1. This disagreement alone is enough for the Court to hold that summary judgment is not appropriate with regard to Parcel 22.

## V. Parcel Allegedly Obtained via Adverse Possession

Turning to Parcel 23, Plaintiffs argue that Original Railroad acquired an easement through adverse possession. ECF 18 at 21. Plaintiffs rely on *Morgan* for the proposition that continuous possession of a corridor for railroad purposes results in an easement being acquired through adverse possession. *Id.* (citing *Morgan*, 421 P.2d at 269-71). The Government disputes that Parcel 23 was acquired through adverse possession and maintains that Plaintiffs have not adequately demonstrated they possess an interest in the parcel. *See* ECF 16 at 7 n.1; ECF 25 at 26-27; ECF 27 at 14. While the Government concedes that adverse possession may be treated as a condemnation under Oklahoma law, it relies on *Jones* to disagree as to whether the interest conveyed is fee simple or easement. *See* ECF 25 at 26.

As with Parcel 22, the parties have not stipulated to the source conveyance associated with Parcel 23. In particular, "[t]he parties disagree regarding the identity of the original source conveyance associated with Valuation Parcel 23, and therefore at this time, the parties stipulate only to Valuation Parcel 23's applicability to Claim 25D and not to the particular source conveyance with which Valuation Parcel 23 applies." ECF 16 at 7 n.1; *see also* ECF 18 at 21 n.14 ("[A]lthough the government stipulated to Parcel No. 23's applicability, it did not stipulate as to Parcel No. 23 having been acquired through adverse possession.").

However, Plaintiffs again argue that the Government "has now admitted that adverse possession applies." ECF 26 at 23 n.25 (citing ECF 25 at 26). Plaintiffs view the same language quoted above as a concession from the Government that Parcel 23 was acquired through adverse possession. ECF 26 at 23; *see* ECF 25 at 26 ("Plaintiffs have also not demonstrated that the parcels listed on the ICC valuation maps as being acquired through federal land grant (Parcel 22) or adverse possession (Parcel 23) (both applicable to Stillwater Milling Company, Claim 25.D) are easements."). Again, Plaintiffs make too much of the Government's phrasing. The Government's acknowledgement that Parcel 23 was "listed on the ICC valuation maps as being acquired through … adverse possession" is simply an acknowledgement of what the ICC maps state and cannot be construed as a concession that Parcel 23 was acquired through adverse possession. ECF 25 at 26. This understanding is bolstered by a broader reading of the Government's argument that discusses Parcel 23 as one of "the parcels *that Plaintiffs assert* the railroad acquired only through adverse possession …." ECF 27 at 14 (emphasis added).

Critically, Plaintiffs have not put forth any primary documents substantiating that the Railroad acquired Parcel 23 through adverse possession. *See* ECF 18 at 21; *see also* ECF 26 at 23. Instead, Plaintiffs supply a conclusory statement: "Ex. 25.B clearly

demonstrates that Plaintiffs' description[] of Parcel No.[] … 23 [is] correct." ECF 18 at 21 n.14.[10] From this statement, the Court understands Plaintiffs to rely on their demonstrative parcel map and the ICC valuation map.[11] But Plaintiffs concede that their demonstrative mapping "is not intended as standalone evidence." ECF 26 at 25. Rather, they acknowledge that "[t]he maps are merely visual aids to provide context to the factual issues in dispute." *Id.* at 26.

Likewise, the ICC maps alone are unavailing to establish Plaintiffs' interest in Parcel 23 such that summary judgment is appropriate under the facts of this case. This Court has previously recognized that "[t]he purpose of [ICC] maps was to identify parcels for valuation, not to distinguish types of ownership." *Amaliksen v. United States*, 55 Fed. Cl. 167, 175 (Fed. Cl. 2003). Accordingly, ICC maps are considered secondary evidence and interpretive aids in rails-to-trails cases. *See Mills v. United States*, 147 Fed. Cl. 339, 343, 348 (2020); *Loveridge v. United States*, 149 Fed. Cl. 64, 79 (2020). The Court may properly consider ICC maps under particular circumstances, such as when plaintiffs do not have access to instruments of transfer despite efforts to obtain additional records. *Mills*, 147 Fed. Cl. at 348 (finding use of ICC maps proper where "[p]laintiffs have done what they can" to locate information regarding a conveyance); *see also Loveridge*, 149 Fed. Cl. at 79 (relying on ICC maps where plaintiffs sought additional evidence by issuing a subpoena to the railroad and conducting a title search). While here, Plaintiffs are limited in the type of evidence that may be available to demonstrate that the Original Railroad adversely possessed Parcel 23, they have not demonstrated that they made any attempts to collect additional documentation. Accordingly, the Court finds that the ICC maps alone are unavailing to establish Plaintiffs' interest in Parcel 23 at this time. *See Loveridge*, 149 Fed. Cl. at 79. Because there is a dispute as to whether Parcel 23 was acquired via adverse possession, the issue is not ripe for summary judgment.

## VI. Abercrombie, Thomas, and Palmour Deeds

Plaintiffs go on to allege that the Abercrombie, Thomas, and Palmour Deeds contain reversionary language that only conveyed an easement or, at most, fee simple determinable interest to the Original Railroad. ECF 18 at 22-24. The Government concedes these deeds contain reversionary language but argues that Plaintiffs hold no reversionary interest in the parcels because (1) the cited reversionary language is personal to the grantor and did not

---

[10] Given that Parcel 22 is allegedly associated with Stillwater's Claim 25D, *see* ECF 16 at 6-7 n.1, Plaintiffs presumably meant to refer to the portion of Ex. 25A-B that relates to Stillwater's Claim 25D. *See* ECF 18-30 at 28-59.

[11] Plaintiffs represent that each exhibit has two categories of documents (identified as #.A and #.B for each claim), consisting of: (A) ownership deeds and tax parcel reports; and (B) a demonstrative parcel map along with the applicable source conveyance and corresponding ICC valuation maps. *See* ECF 18 at 13. Because Ex. 25A-B does not include any primary evidence demonstrating that Parcel 23 was acquired through adverse possession, the Court understands Plaintiffs' reference to "Ex. 25.B' to refer specifically to the demonstrative parcel map contained within Ex. 25A-B titled "Claim No. 25.B-D—Stillwater Milling Company" as well as the applicable ICC valuation map. *See* ECF 18-30 at 33-34.

necessarily transfer with the land; and (2) Plaintiffs have not put forth any evidence to show that they now hold any reversionary interests. ECF 25 at 27-28.

A determinable fee simple "is immediately terminated by the happening of some possible event, subsequently. The estate remaining in the grantor after the conveyance of such an estate is a possibility of reverter which he may convey …." *Frensley v. White*, 254 P.2d 982, 984 (Okla. 1953). This results in a transferable interest, and the occurrence of the specified condition triggers reversion of the interest to the grantor or a party to whom the grantor has transferred the interest. *Bonebrake v. McNeill*, 491 P.2d 269, 271 (Okla. 1971); *Ator v. Unknown Heirs, Pers. Reps., Devisees, Trs., Successors & Assigns of Ator*, 146 P.3d 821, 826 (Okla. Civ. App. 2006) (citing *Ludwig v. William K. Warren Found.*, 809 P.2d 660, 662-63 (Okla. 1990)).

Here, all three deeds include a reversionary clause, as demonstrated by the Abercrombie deed:

> [I]f at any time said Eastern Oklahoma Railway Co., its successors or assigns, shall discontinue the use of said spur or industry track and wholly abandon the same, the title to said Railway Company herein conveyed shall vest in and revert to the grantors herein, their heirs, executors, administrators or assigns, together with all the improvements thereon and appurtenances thereto belonging and warrant title to the same.

ECF 18-50 at 1; ECF 18 at 23. Plaintiffs argue that this limiting language "satisf[ies] Oklahoma's standard to determine the Deeds were intended as easement conveyances." ECF 18 at 23. However, the Court cannot agree. The mere facts that the deeds "are deeds to a railroad for its railroad" and "are identified as 'Right of Way' deeds on the ICC Valuation Maps and Schedules" are insufficient without more to limit the quantum of estate. *See* ECF 18 at 23. Oklahoma courts have long recognized the dual meaning of the phrase "right of way," to indicate either an easement or a fee simple estate. *See Aubert*, 251 P.2d at 193. Here, Plaintiffs acknowledge that the relevant conveyances granted property identified as a "strip of land" and that the granting clauses would normally invoke Oklahoma's fee simple presumption for deeds. *See* ECF 18 at 23. Accordingly, the Court finds that the Abercrombie, Thomas, and Palmour Deeds did not convey easements. Instead, they granted a fee simple determinable interest to the railroad with a possibility of reverter.

The parties do not dispute that the reversionary interests are transferable under Oklahoma law. ECF 18 at 24; ECF 25 at 28. Rather, the parties dispute who currently holds them. It is Plaintiffs' burden to establish a cognizable property interest. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1348 (Fed. Cir. 2013). Plaintiffs may have acquired the interests at some point since the conveyance to the Original Railroad. *See Bonebrake*, 491 P.2d at 272 (heirs retained a possibility of reverter through an initial conveyance but subsequently transferred the interest through quitclaim deed). However, Plaintiffs have not

provided any documentation to support that the interests were transferred to Plaintiffs or their predecessors-in-interest from the original grantors or their heirs, executors, administrators, or assigns. Instead, they argue that a possibility of reverter is transferred with the land, but that is not *necessarily* true under Oklahoma law. ECF 18 at 22-24; *see Oklahoma City v. Wainwright*, 187 P.2d 226, 231 (Okla. 1947) (recognizing that a reversionary property interest is alienable and may be devised or transferred through intestacy); *see also Bonebrake*, 491 P.2d at 272 (recognizing that a grantor's heirs possessed an alienable reversionary interest).

Plaintiffs may be able to provide evidence that they received a reversionary interest; however, they have only provided the source conveyances containing the reversionary language. Therefore, Plaintiffs' failure to present this evidence precludes summary judgment in their favor. With respect to the Government's cross-motion, the Court must generously infer that such evidence could be produced in Plaintiffs' favor. Therefore, neither party is entitled to summary judgment on this issue.

## VII. Hutto, Standley, Lewis, Miller, and Lowery Fee Deeds

For the remaining deeds, Plaintiffs concede that the source conveyances conveyed fee simple to the Original Railroad, but they allege that they are nonetheless entitled to just compensation. ECF 18 at 25. First, Plaintiffs argue that modern evidence establishes that certain Plaintiffs have a property interest in the railroad corridor, irrespective of the Hutto, Standley, Lewis, Miller, and Lowery Fee Deeds. *Id.* Plaintiffs present demonstrative maps that they claim incorporate data from both Plaintiffs' current ownership deeds and publicly-available information from Payne County, to show that Plaintiffs' properties overlap with the railroad corridor. *Id.* at 25-28 (referencing 18-30 through 18-34). The Government takes issue with Plaintiffs' demonstrative maps and alleges the maps constitute inadmissible evidence in violation of Federal Rules of Evidence Rules 901(a) and 805. ECF 25 at 29-32.

Plaintiffs' maps are insufficient to support their Motion for Summary Judgment. First, the Court shares the Government's admissibility concerns. Court of Federal Claims Rule 56(c)(2) states "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *See Bannum, Inc. v. United States*, 151 Fed. Cl. 755, 762 (2021) ("While the non-moving party may defeat a motion for summary judgment with evidence, such as hearsay, that would not be admissible at trial, such evidence must be corroborated or reflect some indicia of reliability."). Plaintiffs concede their demonstrative maps are nothing more than visual aids. ECF 26 at 26. Plaintiffs further acknowledge that the maps' boundaries may be "indeterminate." *Id.* at 32.[12] However, although Plaintiffs represent that their maps are based on underlying

---

[12] The Government alleges that the maps inaccurately depict certain boundaries and cannot be relied on as Plaintiffs themselves acknowledge that the boundaries are "indeterminate." ECF 27 at 15-16. However, Plaintiffs do not concede that the maps are necessarily indeterminate. ECF 26 at 32 ("*[T]o the extent* the

evidence and documentation, the Court cannot just take Plaintiffs at their word; some corroboration or indicia of reliability is required. Instead, Plaintiffs assert, "[t]he government has stipulated to the applicability of every single source conveyance and parcel identified on Plaintiffs' demonstrative mapping, and so, clearly, the mapping reasonably depicts the parcels and boundaries at issue." ECF 26 at 26. The Court cannot agree that, just because the Government stipulated to the applicable source conveyances and parcels, the maps drawn by Plaintiffs *must* be accurate. This conclusory argument does not prevent the Government from challenging Plaintiffs' self-created maps, and it does not displace Plaintiffs' obligation to provide evidence that could be presented in an admissible form. *See* Rule 56(c)(2).

Further, Plaintiffs have not provided any legal foundation for their contention that their modern deeds and maps displace the source conveyances. These assertions are only backed by Plaintiffs' demonstrative maps; they do not refer to any language in the modern deeds themselves to support their argument. *See* ECF 18 at 25-29. In addition, Plaintiffs have made no attempt to show how their modern deeds could provide superior title under Oklahoma law. As a result, Plaintiffs have not provided sufficient evidence or legal bases to show that their modern deeds overcome the source conveyances, and thus, are not entitled to summary judgment.[13]

Nor is the Government entitled to summary judgment. The Government draws parallels between the present case and this Court's decisions in *Bevirt v. United States*, 177 Fed. Cl. 275 (2025) (rejecting claims of superior title based solely on modern deeds) and *Bevirt v. United States*, 180 Fed. Cl. 217 (2026) (denying reconsideration). ECF 27 at 18-19. Plaintiffs' argument that their modern title evidence defeats the Original Railroad's ownership from the source conveyances is similar to the plaintiffs' argument in the *Bevirt* cases. ECF 27 at 19. However, the present case is distinguishable from *Bevirt* because the plaintiffs in that case: (1) conceded the successor railroad held the same rights as its predecessor-in-interest; and (2) actually argued that they held superior title under relevant state (North Carolina) law. *See Bevirt*, 180 Fed. Cl. at 219; *Bevirt*, 177 Fed. Cl. at 278 n.1. Unlike in *Bevirt*, the Government here has not pointed to a concession or other basis to demonstrate that Plaintiffs cannot show they have a property interest. Because Plaintiffs may be able to present evidence that they came to hold superior title to the relevant land, the Government is not entitled to summary judgment with respect to claims arising in relation to these source conveyances.

---

exact boundaries are indeterminate, that is easily remedied through obtaining boundary surveys ….") (emphasis added). Plaintiffs' acknowledgment that the boundaries may be more clearly defined cannot be viewed as a concession by Plaintiffs that the maps are unreliable.

[13] Plaintiffs also note that a strip of Plaintiffs Hilovsky and Skiba's property is within the corridor, and as such, should be entitled to summary judgment on this basis. ECF 18 at 29 n.28. The Court disagrees for the same reasons as those stated with respect to the other claims within this section.

## VIII. George, Harmon, and Jones Fee Deeds

Finally, for the parcels stemming from the George, Harmon, and Jones Fee Deeds, the Government moves for summary judgment "[b]ecause the Railroad owns fee and these Plaintiffs own no land subject to the NITU." ECF 25 at 28. Although Plaintiffs concede that they do not have an interest in the corridor, ECF 18 at 25, they nonetheless argue that the Government's intended use of the corridor burdens Plaintiffs' adjacent property in such a manner that the future use presently amounts to a non-invasive taking of Plaintiffs' property. ECF 18 at 29-32. In response, the Government contends that Plaintiffs: (1) failed to raise a non-invasive takings theory in their pleadings; (2) lack standing at this time to bring a takings claim; and (3) fail to support the legal basis for their claims. ECF 25 at 34-38.

The Government is correct. In their Motion for Summary Judgment, "Plaintiffs concede that the Fee Deeds convey fee interests, and that Plaintiffs exclusively associated with the Fee Deeds (and who do not otherwise own the corridor land) would not have a claim for just compensation based on any reversionary interest in the corridor." ECF 18 at 29. Plaintiffs' concession is fatal to the claims arising from the George, Harmon, and Jones Deeds. *See Chi. Coating Co. v. United States*, 892 F.3d. 1164, 1170 (Fed. Cir. 2018) ("If the railroad company owns the land in fee simple, then the Government cannot have committed a taking and the analysis ends.").

Plaintiffs' non-invasive takings theory cannot save their claims. First, Plaintiffs cannot raise a claim for the first time in a summary judgment motion. *See The Redland Co. v. United States*, 97 Fed. Cl. 736, 756 (2011). A non-invasive taking claim may occur when "[t]he United States…impos[es] such burdens upon the use of property as to deprive the owner of the enjoyment of the land." *Argent v. United States*, 124 F.3d 1277, 1283 (Fed. Cir. 1997) (citing *United States v. General Motors Corp.*, 323 U.S. 373, 378 (1945)). However, Plaintiffs' Complaint only alleges physical takings claims, not this novel non-invasive taking theory. *See* ECF 1 at ¶ 43. Plaintiffs point to paragraph 45 of their Complaint as sufficiently pleading this claim, but this paragraph does not address the Government's actions on adjacent land or how such actions burden their use and enjoyment of their land. Put differently, it says nothing about a non-invasive takings claim. *See* ECF 1 at ¶ 45 ("The United States' actions damaged Plaintiffs by taking a portion of their property, by diminishing the value of the remaining property, and by attenuating delay damages based upon the delayed payment of compensation."). Consequently, Plaintiffs have not properly pled this claim.

Even had Plaintiffs properly pled a non-invasive takings claim, Plaintiffs lack Article III standing to pursue such a claim at this time. The question of when a non-invasive taking has occurred "is a factual matter that depends on matters such as when the alleged increase in [the interfering activity] occurred." *Argent*, 124 F.3d at 1287. But here, no "peculiarly burdensome" activity has started. *See id.* at 1824. Thus, Plaintiffs' claims are entirely speculative; no harm has occurred. Moreover, Plaintiffs attempt to distinguish their non-invasive takings claims from other rails-to-trails cases. *See* ECF 26 at 33. Yet,

Plaintiffs simultaneously rely on these supposedly dissimilar cases for the proposition that Plaintiffs' damages started at the time of the issuance of the NITU. ECF 26 at 33 n.35. Plaintiffs' logic is flawed in this regard. For purposes of a non-invasive takings claim, the taking occurs at the time of the substantial interference. *Argent*, 124 F.3d at 1287. Here, Plaintiffs have not alleged that any particularly burdensome activity has actually caused any harm to Plaintiffs' land.

Finally, apart from Plaintiffs' failure to plead this claim and lack of standing, they do not even establish how the trail, once it is constructed, will lead them to experience any sort of interference peculiar to them. Plaintiffs rely on two key non-invasive takings cases to support the alleged burden that will occur on their land as a result of the Government's use of the adjacent land for a recreational trail. First, *Argent* involved plaintiffs living next to a Navy air station that launched over 100 low-altitude flights over or adjacent to the plaintiffs' land every week. 124 F.3d at 1284. In *Richards*, an adjacent train tunnel caused "the outpouring of gases and smoke from the entire length of the tunnel" onto the plaintiff's land. *Richards v. Wash. Term. Co.*, 233 U.S. 546, 557-58 (1914). Unlike the Plaintiffs in *Argent* or *Richards*, Plaintiffs have not shown that a recreational trail will "impos[e] such burdens upon the use of [their] property as to deprive the owner of the enjoyment of the land." *Argent*, 124 F.3d at 1283. In fact, the Court is not persuaded that a biking and walking trail would cause even a generalized harm. For these reasons, Plaintiffs' unpled and unsupported non-invasive takings argument cannot save their claims. Because the Railroad owns the property at issue in fee and these Plaintiffs do not have any interest in the corridor, the Court grants summary judgment in the Government's favor.

## IX. Centerline Presumption

Finally, the parties disagree as to the application of the centerline presumption. Plaintiffs allege that they are entitled to the centerline presumption with respect to all claims. ECF 18 at 34-36. In contrast, the Government argues against application of the presumption because, in its view, all of the claims involve fee simple conveyances. ECF 25 at 39. In the alternative, the Government seeks to rebut the centerline presumption with respect to certain claims. ECF 25 at 39-40.

The parties agree that the centerline presumption applies only to claims underlain by source conveyances transferring easements. ECF 25 at 39; ECF 26 at 35. In Oklahoma,

> [t]he grantor of land bordering or abutting upon a railway right of way, who owns the fee of such right of way subject to the burden of the right of way, and who subsequent to the grant owns no part of the land on either side of the right of way, is presumed to have conveyed his interest in the right of way, unless a contrary intention clearly appears or is expressed.

*Cuneo v. Champlin Refining Co.*, 62 P.2d 82, 83 (Okla. 1936) (Syllabus by the Court). The Government bears the burden of rebutting the presumption and, in order to do so, "the

means of rebuttal must be within the conveyance itself." *Kassner v. Alexander Drug Co.*, 147 P.2d 979, 981 (Okla. 1943).

Turning first to Claim 23,[14] the Government attempts to rebut the presumption, or potentially argue that the presumption would be inapplicable, based upon aerial imagery and GIS data from the City of Stillwater that depict a road "near the subject parcels." ECF 25 at 40. Yet, the Government does not actually provide an explanation as to how the presence of the road rebuts the presumption nor does the Government put forth an argument regarding ownership of the road. *See id.* Indeed, Oklahoma law provides that "[a]n owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown." 69 Okla. Stat. § 1202 (1968). Accordingly, the Government's conclusory argument does not rebut the centerline presumption with respect to Claim 23.

The Government next argues that the language within Plaintiffs' modern warranty deed associated with Claims 25A and 25B excepts the railroad.[15] ECF 25 at 39. The particular language from the warranty deed transfers an interest "LESS AND EXCEPT the Eastern Oklahoma Railroad (now Atchinson, Topeka and Santa Fe Railroad) right of way lying on the West side of the above described tract." ECF 18-30 at 3. The property description provided by the Payne County Assessor's Office also states "Less Rr R/W On W." ECF 18-30 at 20.

However, neither the language in the deeds nor the description from the Payne County Assessor's office contain language sufficient to rebut the centerline presumption. The presence of the phrase "less and except" in the deed does not necessarily evince the grantor's intention to reserve its interest in the land. *See Bryan v. Everett*, 365 P.2d 146, 148 (Okla. 1961) ("The terms 'reserving' and 'excepting' will give way to manifest intent, even though the technical term to the contrary is used."). Rather, the language appears merely to acknowledge that the land was burdened by the railroad easement, but it is silent with respect to whether the grantor intended to keep its interest. *See* ECF 18-30 at 3; *Kassner*, 147 P.2d at 981 ("[I]f a grantor…desire[s] to retain the right of reversion to a strip of abutting easement way, he must see to it that it clearly appears from the language of the conveyance that such reservation was actually intended.") (internal quotation marks omitted). The description from the Payne County Assessor's office likewise does not demonstrate any reversionary intention. *See* ECF 18-30 at 20. As the Government has not supplied evidence establishing that the grantor intended to reserve the interest, the Government has not rebutted the centerline presumption as to Claims 25A and 25B.

---

[14] The Government particularly cites to "Parcel 23A and 23B." ECF 25 at 40 n.4. The aerial imagery cited by the Government is associated with Payne County Account Numbers: 600017685 and 600017687. *See* ECF 18-28 at 4, 6. These Account Numbers are associated with Claim 23; therefore, the Court understands the Government's argument on this point to be in reference to Claim 23. ECF 16 at 4.

[15] The Government makes a similar argument with respect to Claims 26 and 27. ECF 25 at 40. However, because Claims 26 and 27 are not associated with conveyances transferring easements, the centerline presumption does not apply. *See Cuneo*, 62 P.2d at 83.

The Government additionally objects to the presumption's application with respect to Claim 25D, and alleges that the former Park Street, which was dedicated to the City of Stillwater, underlays the corridor. ECF 25 at 40. Because the Canfield 600 Condemnation associated with Parcel 9 is applicable to Claim 25D, it is possible that the centerline presumption applies to portions of that land, absent a showing by the Government that rebuts the presumption. *See* ECF 16 at 6-7; ECF 13-30 at 33. However, as discussed *supra* Section IV, the parties have yet to agree on all of the applicable parcels and all of the source conveyances associated with Claim 25D. *See* ECF 16 at 7 n.1. Because answering the centerline presumption question requires resolving these unsettled issues, the Court finds that further factual and legal development is necessary. With respect to the Canfield 600 Condemnation, the Court finds it conveyed an easement to the Original Railroad but the Court reserves the centerline presumption issue for further proceedings.

Because the Government has not rebutted the centerline presumption with respect to the Beavers, Wittum, Husband, Canfield 607, Palmour, and Donart Condemnations, the Court finds that Plaintiffs own the associated portions of their properties up to the centerline of the railroad corridor.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF 18) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' Motion is **GRANTED** with respect to the claims or portions of claims arising from the Beavers, Wittum, Husband, Canfield 607, Palmour, and Donart Condemnations, and those claims may proceed to the next phase of litigation. Plaintiffs' Motion is otherwise **DENIED**. The Government's Cross-Motion for Summary Judgment (ECF 25) is **GRANTED IN PART** and **DENIED IN PART**. The Government's Motion is **GRANTED** with respect to the claims or portions of claims arising from the Farrar and Morris conveyances and the George, Harmon, and Jones Deeds, and it is otherwise **DENIED**. The parties **SHALL FILE** a joint status report within 14 days of the filing of this opinion, including a detailed proposal for further proceedings.

**IT IS SO ORDERED.**

Philip Hadji

PHILIP S. HADJI
Judge